## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **MUNA JAMA** | Case No. |
| Plaintiff | |
| v. | Hon. |
| **COLETTE PETERS,** Director of the Federal Bureau of Prisons, in her official capacity, only; | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES, AND JURY DEMAND** |
| **ANDRE MATEVOUSIAN**, Regional Director of North Central Region, Federal Bureau of Prisons, in his individual and official capacity; | |
| **WARDEN MICHAEL SEGAL OF FCI WASECA**, in his individual and official capacity; | |
| **JOHN DOE, Officer at FCI Waseca**, in his individual capacity, only; | |
| **OFFICERS X AND Y, at FCI Waseca**, in their individual capacity, only; | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES

Plaintiff **MUNA JAMA**, by and through her attorneys, CAIR Legal Defense Fund ("CAIR"), CAIR-Minnesota ("CAIR-MN"), and The Law Office of Deborah M. Golden, brings this complaint for declaratory and injunctive relief against defendants **COLETTE PETERS,** Director of the Federal Bureau of Prisons, **WARDEN MICHAEL SEGAL** of FCI Waseca, **ANDRE MATEVOUSIAN**, Regional Director of North Central Region of the Federal Bureau of Prisons,

**JOHN DOE** of FCI Waseca, and **OFFICERS X-Y** of FCI Waseca (henceforth "Defendant Officers X,Y" for violations of the Religious Freedom Restoration Act ("RFRA") 42 U.S.C. § 2000bb-1, .pursuant to 28 U.S.C. § 1331, and states as follows:

## NATURE OF THIS ACTION

1. Defendants forced a Muslim American woman in their custody to remove her hijab, photographed her uncovered, and now require her to carry that uncovered photo on an ID she must present throughout the prison every day. It is a violation of federal law as clear as it is senseless.

2. The Free Exercise Clause of the US Constitution has long guaranteed individuals the right to practice their religious beliefs without interference from the government. Key legislation has been born from its ideals, ensuring the safeguarding our freedoms, specifically during interactions with law enforcement. With the enactment of the Religious Freedom Restoration Act ("RFRA"), Congress codified a constitutional rule previously set by precedent. As a result, these rights remain intact, even when one faces arrest or incarceration.

3. Across the country, prisons and jails, other public and government funded spaces, and other Federal Bureau of Prison locations do not replicate Defendants RFRA-violating practices. Prisons and jails can avoid the problem by not creating it, taking and using covered photographs instead of the uncovered ones Defendants require.

4. The uncovered photograph pervades Muna Jama's existence in prison. Every time Mrs. Jama receives a meal or makes a purchase at commissary, every time she walks past her locker, every bed count, the violations of federal law accrue.

5. This action aims for an order that Defendants take all possible steps to destroy Ms. Jama's uncovered photographs from their database and to end its practice of taking and using uncovered photographs. Using only covered photographs, because such a picture better matches Ms. Jama's everyday appearance, actually serves Defendants purposes better than the uncovered photos that violate RFRA.

## JURISDICTION AND VENUE

6. This action arises under the RFRA, 42 U.S.C. § 2000bb-1.

7. This Court has original federal question jurisdiction over Mrs. Jama's claims of violations of RFRA, pursuant to 28 U.S.C. §1331.

8. At all relevant times, FCI Waseca, where the immediate events transpired, overseen by Defendant Warden Michael Segal, is a federal institution as intended under the RFRA, 42 U.S.C. § 2000bb-1.

9. This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343 over Mrs. Jama's claim regarding the deprivation of rights as secured by the laws of the United States.

10. This Court has personal jurisdiction over Defendants of FCI Waseca because they reside and conduct business in Minnesota.

11. This Court has personal jurisdiction over Defendants Peters and Matevousian due to their responsibility as directors over the facility in Minnesota.

12. This court has jurisdiction over Mrs. Jama's constitutional claims pursuant to 42 U.S.C. §1983.

13. Mrs. Jama's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §2201, §2202, and §1343, by Rules 57 and 65 of the Federal Rules of Civil Procedure and the by the general, legal, and equitable powers of this court.

14. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

15. Venue is proper under 42 U.S.C. § 1391 as to Defendants because Defendants of FCI Waseca, where Plaintiff is currently incarcerated, operate within the geographical boundaries of Minnesota. Further, the substantial part of the acts described herein occurred within this District.

**PARTIES**

16. Plaintiff Muna Jama is a Muslim woman and American citizen. She was and is at all relevant times a "person" as the term is defined in 42 U.S.C. § 2000cc et seq.

17. Defendant Colette Peters is an official sworn in by the attorney general to oversee the Federal Bureau of Prisons ("BOP"), a federal organization, duly organized, and carrying on federal governmental functions. She has assumed "responsibility for the operation of 122 Bureau of Prisons' facilities, six regional offices, two staff training centers, and 22 residential reentry management offices. She is also responsible for the oversight and management of approximately 35,000 staff and 160,000 federal inmates."[1] At all relevant times, Defendant Peters was a decision-maker and possessed the power and authority to adopt policies and prescribe rules, regulations, and

---

[1] See https://www.bop.gov/about/agency/bio_dir.jsp

practices affecting all facets of the training, supervision, control, employment, assignment, and removal of individual officers of FCI Waseca. At all relevant times she was the employer of Defendants Matevousian, Segal and Officers X,Y. Director Peter's principal office is, upon information and belief, located at the BOP Central Office HQ, 320 First Street, NW, Washington, DC, where Defendant, by and through her agents, houses and oversees the incarcerees of FCI Waseca. Defendant Peters is sued in her official capacity.

18. Defendant Warden Michael Segal is the official that leads FCI Waseca, a federal organization, duly organized, and carrying on federal governmental functions in the North Central Region of the Federal Bureau of Prisons (BOP). Defendant Warden Michael Segal manages the federal correctional facility and oversees its incarcerees. At all relevant times, Defendant Warden Michael Segal was a decision-maker and possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment, and removal of individual officers of FCI Waseca. At all relevant times Defendant Warden Michael Segal was the employer of Defendant JOHN Doe and Officers X,Y. Defendant Warden Michael Segal's principal office is, upon information and belief, located at 1000 University Dr, SW Waseca, MN 56093 where Defendant, by and through his agents, houses and oversees the incarcerees of FCI Waseca. Defendant Warden Michael Segal is sued in his individual and official capacity.

19. Defendant Andre Matevousian is the Regional Director of the North Central Region of BOP. He is the official that oversees FCI Waseca, a federal organization, duly organized, and carrying out federal governmental functions in the North Central Region of the

Federal Bureau of Prisons (BOP). Defendant Matevousian manages and processes the grievances of incarcerees at FCI Waseca. At all relevant times, Defendant Matevousian was a decision-maker and possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment, and removal of individual officers of FCI Waseca. At all relevant times Defendant Matevousian was the employer of Defendants Warden Michael Segal, JOHN Doe, and Officers X,Y. Defendant Matevousian's principal office is located at 400 State Avenue, Suite 800 Kansas City, KS 66101 where Defendant, by and through his agents, oversees the operations of 20 federal facilities including FCI Waseca. Defendant Matevousian is sued in his individual and official capacity.

20. Defendant John Doe is an individual employed as an officer at FCI Waseca, and is responsible for the custody, safety, security, and supervision of incarcerees at the facility, including taking photos for inmate IDs. At all relevant times, he was charged with protecting the Constitutional rights of incarcerees in her custody and control and assuring that her actions comply with applicable polices, rules, regulations, customs, practices, and procedures of FCI Waseca in addition to local, state, and federal laws. Defendant John Doe personally engaged in discriminatory behavior against Mrs. Jama and deprived her of her rights while she was in his custody and control. He is being sued in his individual capacity, only.

21. Defendant Officers X and Y are individuals employed as officers at FCI Waseca, and are responsible for the custody, safety, security, and supervision of incarcerees at the facility, including taking photos for inmate IDs. At all relevant times, they were

charged with protecting the Constitutional rights of incarcerees in her custody and control and assuring that her actions comply with applicable polices, rules, regulations, customs, practices, and procedures of FCI Waseca in addition to local, state, and federal laws. Defendant Officers X and Y personally engaged in discriminatory behavior against Mrs. Jama and deprived her of her rights while she was in his custody and control. They are being sued in their individual capacity, only.

## FACTUAL BACKGROUND

22. Muna Jama is an American Muslim woman, born in Somalia who came to this country as a child refugee. She completed her education and attended college in the United States. She has been married for 18 years and is the mother of seven children. She is currently incarcerated at FCI Waseca.

23. Mrs. Jama has been a Muslim her entire life. She wears the hijab, a headscarf worn by Muslim women that covers their hair and neck. Mrs. Jama has worn this hijab since she was a child and has never willingly been seen in public without it.

24. Mrs. Jama's Virginia driver's license, Washington driver's license, and passport depicts her wearing the hijab, which covers her hair, ears, and neck.

25. "Hijab" typically refers to a headscarf, wrapped around the head, covering the hair, ears, and neck in order to preserve modesty in line with Islam.

26. Mrs. Jama's faith requires her to always wear hijab when she is in mixed-gender spaces outside of her immediate family. Mrs. Jama's religious beliefs are deeply rooted in Islamic texts and teachings. Her hijab is a pillar of her religious practice and integral to her identity as a Muslim woman.

27. Appearing in public without hijab or being photographed without wearing hijab and having that photo accessible to strangers is a serious breach of Mrs. Jama's faith and a deeply humiliating and defiling experience in conflict with her sincerely held religious beliefs.

28. Mrs. Jama also wears the abaya, a long-sleeve, full-length dress typically worn by Muslim women to conceal the outline of the body. She believes that in addition to covering her hair, she is required to wear loose-fitting clothing that fully covers her arms and legs. Mrs. Jama must fully cover in front of males who are not members of her immediate family. Prior to her incarceration, along with her hijab, Mrs. Jama wore the abaya whenever she was in public. Whether shopping or at work she was clothed in her abaya. While incarcerated she has worn the most oversized, loose-fitting clothes available to her to make up for the lack of abaya provided.

29. Mrs. Jama has been in federal custody since approximately 2016 and has since experienced 7 years of forced hijab removal and improper uniforms.

30. At various points throughout her custody in the BOP, she has been left with nothing to cover her head but a T-shirt, paraded uncovered in front of male and female officers and inmates, and forced to have identification pictures taken without a hijab. She has been threatened with solitary confinement and denial of family contact if she refused to comply with these violations.

31. These pictures have been stored in the BOP computer systems used to track inmate pictures.[2] This includes the TRUFACS database, the Trust Fund Accounting and Commissary System. [3]

32. She has also been forced to wear an ID card with her hijab-less photo.  This ID card has been used by male officers and prison employees to identify Mrs. Jama during counts, at commissary, and other check in points. Each time Mrs. Jama swiped her ID card, her hijab-less photo would appear on the database screen for any males in the vicinity to view. This hijab-less ID caused Mrs. Jama a great deal of shame and embarrassment. Her identity as a Muslim woman wearing hijab was compromised and her beliefs violated on a near daily basis.

33. BOP facilities may identify inmates at commissary using alternate means than a photo ID card, including fingerprinting or non-photo IDs.[4]

34. The hijab-less ID card did not even do a good job identifying her. Mrs. Jama often found that officers in the facility would actually have a hard time identifying her by her ID card because she was always in her hijab. The only time she was seen without it was when officers forced her to remove during transfers between facilities, to the medical area, or the like.

35. This identification photo remains in the BOP database.

---

[2] Since 1981, the BOP has used SENTRY, "a real-time information system consisting of various applications for processing sensitive but unclassified (SBU) inmate information…" See https://app.g2xchange.com/fedciv/posts/doj-awards-49m-bureau-of-prisons-sentry-modernization-and-cloud-migration-task ; This contains information regarding all inmates in the bureau's custody. See https://fedscoop.com/federal-bureau-prisons-sentry-modernization/; See also https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-justice/rg-0129/n1-129-04-007_sf115.pdf ; See also Privacy Impact Assessment: https://www.bop.gov/foia/docs/sentry.pdf at §1.1 which mentions having photographs.

[3] See https://www.bop.gov/policy/progstat/4500_011.pdf; §3.6 explicitly states that photo IDs are stored in the system.

[4] *Id*. at §1.2(a)(3)

36. Since 2019, Mrs. Jama has been incarcerated at FCI Waseca. As had been the case in every other BOP prison, upon arrival, Mrs. Jama was escorted to a public booking lobby for her identification photo. This time, her photo was taken by Defendant Officer Josh Doe. Her hijab was, once again, not allowed. Mrs. Jama tried in vain to convince Defendant Officer JOHN Doe of her religious rights, she screamed and begged in vain. Defendant JOHN Doe threatened her with solitary confinement if her pleading continued. Mrs. Jama relented and was photographed by Defendant Officer JOHN Doe without a hijab for her jail ID card.

37. At FCI Waseca, as in every other BOP prison, incarcerees' ID cards must be carried everywhere and used at every program and checkpoint in the facility.

38. This includes during Bed Book Count, when officers, male and female, enter incarcerees' cells to check their ID, name, number, and match their face to their photo in a physical book. For Mrs. Jama, this book continues to feature her uncovered photo.

39. ID cards are also required at commissary and during meals, where Mrs. Jama must swipe her ID card for male and female employees. The corresponding uncovered photo then appears on the screen for all those in the vicinity to see.

40. ID photos are also featured on incarcerees' hobby craft locker, front facing for all those who pass to see. Mrs. Jama's uncovered photo is featured on the front of her locker, where she is aware that all officers can observe her photo.

41. On July 7, 2022 Mrs. Jama filed her first informal resolution attempt complaint with BOP regarding the violation of her religious rights through the photographing of Mrs. Jama without a hijab, the photo's existence in the facility's database, and the required

use of the resulting ID card throughout the facility, amongst other issues of religious discrimination she was facing at FCI Waseca. She eventually filed a tort claim.

42. This grievance resulted in Mrs. Jama being brought in for a new ID picture, under the impression that the new ID would feature her hijab and replace the old photo.

43. On September 23, 2022 Mrs. Jama was escorted to the booking lobby again. There, Officers X and Y  took a photo of Mrs. Jama with her hijab still on.  Mrs. Jama felt relieved, like she was finally going to be free of the consistent humiliation and shame.

44. To Mrs. Jama's surprise and confusion, Officers X,Y informed her that another picture would need to be taken, this time without her hijab. She inquired as to what was happening. The officers responded that this was the order they were instructed to follow. Mrs. Jama argued with the officers, exclaiming that she thought things were finally fixed and her hijab would be allowed, why were they asking to take another photo? She was reprimanded and threatened with time in the SHU by Officers X,Y. Feeling defeated once again, and without safe alternative, Mrs. Jama complied and took the uncovered photo.

45. Mrs. Jama Was given a new ID with the photo of her in a hijab. However, she was still confused as to why she had to take the second picture without it, and what that picture would be used for.

46. Defendant Matevousian personally responded to one of her grievances. The response excused the second picture without her hijab as something necessary for security purposes. Defendant Mateviousian claimed that this identification without a head covering was necessary for confidential Bureau records, so the two sets of photos were created as a 'least restrictive alternative."

47. However, Mrs. Jama quickly realized that this was not a picture kept in the back for security purposes. Soon after, she lost her ID and went to retrieve a new copy. The copy provided to her featured the uncovered photo.

48. On May 31st, 2023. Mrs. Jama was checking out in commissary when she noticed that her uncovered photo appeared on the system screen while scanning her ID card. This was visible to the male employee and everyone else in the area.

49. On May 31st, 2023 and on June 6, 2023, a "Bed Book Count" was conducted in Mrs. Jama's cell by mixed gendered officers. Mrs. Jama noticed that the physical book used to identify her featured the uncovered photo. This has continued to be the case for every "Count" since.

50. The failure to accommodate her religious needs compounded from there. She noticed that her uncovered photo was posted on the front of her Hobbycraft locker on June 7th, 2023. That same day, she went to Compound Central to ask for a copy of her ID to confirm her suspicions. The officer on duty printed her file featuring the picture without a hijab.

51. All Defendants, by and through their agents and in accordance with their respective facility policies and practices, photographed Mrs. Jama and uploaded those photos to their respective databases for use. Throughout her time incarcerated in each facility these photos all remain on file and available for all staff to view, as well as all security footage of her transfers and photographing.

52. The Defendants prohibited Mrs. Jama from wearing her religious attire. Pursuant to their own office, customs and policies, they each have been involved in a failure to

easily accommodate her beliefs by photographing her with her face showing but hijab intact.

53. By maintaining the uncovered photographs in the BOP systems and continuing to use and display them for day-to-day purposes, Defendants have memorialized the violation of Mrs. Jama's rights under RFRA, in a manner that continuously perpetuates the violations she has and continues to experience.

54. Defendants caused the forcible removal of Mrs. Jama's religious head covering without her consent pursuant to a custom, practice, or official policy promulgated and implemented by each facility, which was ratified by each facility, or which each facility failed to address.

55. BOP has enacted a policy accommodating "religious headwear" to be worn throughout their facilities, providing that "[s]carves and head-wraps (hijabs) are appropriate for female inmates."[5] However, Defendants lack a written policy addressing the issue of photographing female incarcerees without their religious head covering.

56. In contrast to the BOP's policy, custom, and practice of forcibly removing religious head coverings during detention, the New York Department of Corrections permits incarcerees to wear religious head coverings during photographing.[6]

57. In contrast to each facility's policy, custom, or practice of forcibly removing religious head coverings during detention, the Orange County Sheriff's Department in

---

[5] See U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement re: Religious Beliefs and Practices (Dec. 31, 2004), available at:  http://www.bop.gov/policy/progstat/5360_009.pdf.
[6] See State of New York, Dep't of Correctional Servs., Directive No. 4202, Religious Programs and Practices at 9 (October 19, 2015); *See also* https://www.nytimes.com/2020/11/09/nyregion/hijab-muslim-nypd-mugshot-scarves.html

California, as of 2013, does not require Muslim women in custody to remove their hijabs in front of male officers, and provides temporary headscarves.  This occurred following a suit by a Muslim woman detained in North County Justice Center for several hours after being forced to remove her hijab.[7]

58. These examples show a growing national consensus that there is no basis to require the removal of religious head coverings while in detention or custody.

59. By forcibly removing Mrs. Jama's hijab, photographing her, and broadly disseminating her uncovered photo without a valid security concern, by photographing her without her hijab and without her consent, Defendants caused Mrs. Jama extreme mental anguish, trauma, and emotional distress.

60. This action aims to have Mrs. Jama's illegally captured photographs and security footage destroyed, require official capacity Defendants to adopt RFRA compliant policies of jail identification and photos, have official capacity FCI Waseca Defendants provide Mrs. Jama with a new ID with a covered photograph, and have individual capacity defendants provide monetary damages for violations of RFRA.

### COUNT I
**Violation of the Religious Freedom Restoration Act (RFRA)**
**42 U.S.C.A. § 2000bb**
**(Against All Defendants)**

61. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

62. Defendants imposed a substantial burden on Plaintiff's religious exercise without compelling justification.

---

[7] http://www.ocregister.com/articles/religious-495992=county-court.html

63. Defendants' decision to remove Plaintiff's hijab throughout the facility, to take a booking photograph without her hijab for their records and force her to carry around an ID featuring the uncovered photo substantially impedes the right to free exercise of religion.

64. RFRA provides in relevant part that "governments should not substantially burden religious exercise without compelling justification." And that "the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests."

65. At all relevant times, Plaintiff was confined to an institution when the events transpired.

66. Plaintiff's wearing of a hijab is a sincerely held religious belief and religious exercise.

67. Defendant's acts or omissions, policies, and customs, while Plaintiff was confined in each facility substantially burdened and continues to burden her religious exercise of wearing and being seen in a hijab in mixed gendered spaces.

68. Defendants' acts or omissions, policies, and customs, do not further a compelling government interest in identifying incarcerees. A photograph of a person's face is sufficient for identification for other law enforcement and government agencies. In fact, the United States Department of State allows persons to wear religious head coverings in their passport photos so long as their faces remain visible.

69. Furthermore, other police departments—including the New York Police Department (NYPD)—allow Muslim women to wear their hijab while being photographed. The facility at Lovejoy, a BOP facility, was able to accommodate Mrs. Jama without issue. This begs the question – why couldn't and why won't Defendants do the same?

70.  Even when transferred briefly to the Robert A. Deyton Detention Facility (RAAD) in Lovejoy, GA, Mrs. Jama was treated with far more respect to her religious beliefs. During transfer and throughout the facility, Mrs. Jama was allowed to wear a hijab.

71. An uncovered photo need not be Mrs. Jama's standard identification photograph. Indeed, because the uncovered photo does not match her everyday appearance, Defendants reliance on it works against their purported interest in accurately identifying Ms. Jama.

72. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment in favor of Plaintiff, and against Defendants, for damages in whatever amount Plaintiff is found to be entitled; preliminary injunctive relief followed by a permanent injunction against official capacity Defendants; declaratory judgment against official capacity Defendants; compensatory damages against individual capacity Defendants, costs and attorneys' fees wrongfully incurred to bring this action; and any other damages, including punitive damages as provided by applicable law.

### Prayer for Relief

WHEREFORE, Plaintiff requests that this Honorable Court enter judgement in favor of Plaintiff and against Defendants, on each and every county in this Complaint, and enter an Order awarding the following relief:

a.  An injunction ordering official capacity to implement a policy change prohibiting Defendants from taking booking photographs of Muslim women without their hijab and/or utilizing such photos as forms of identification in the database or on the incarcerees' ID card;

b.  An injunction ordering official capacity Defendants to destroy Plaintiff's ID photographs taken without her hijab and any security footage showing Plaintiff without her hijab;

c.  An injunction ordering official capacity Defendants to take every step, including, but not limited to, instructing other persons or agencies given access to Plaintiff's uncovered photos to destroy all copies of such.

d.  An award of compensatory and punitive damages against individual capacity Defendants under RFRA 42 U.S.C. § 2000bb-1 and 42 U.S.C. § 1983;

e.  An award of attorneys' fees, costs and expenses predicated upon 42 U.S.C. §§ 2000cc-2(d);

f.  Any further relief to which Plaintiff is entitled or that this Honorable Court deems just and proper.

## **Jury Demand**

NOW COMES Plaintiff, by and through her undersigned counsel, and hereby demands a trial by jury of the above-referenced causes of action.

Respectfully submitted,

**CAIR NATIONAL LEGAL DEFENSE FUND**

/s/Lena F. Masri_____

Lena F. Masri (VA 93291)*

lfmasri@cair.com

Gadeir Abbas (81161)*

gabbas@cair.com

Kimberly Noe-Lehenbauer (OK 34744)*

knoelehenbauer@cair.com

Zanah Ghalawanji (MI P83116)*

zghalawanji@cair.com

453 New Jersey Ave SE

Washington, DC 20003

(202) 742-6420

*Co-Counsel for Plaintiff*

*Pro hac vice applications are forthcoming

**CAIR- MINNESOTA**

/s/Alec Shaw_____

Alec Shaw (MN Bar No. 0401082)

ashaw@cair.com

2511 East Franklin Avenue, Suite 100

Minneapolis, MN 55406

(612) 206-3360

*Co-Counsel for the Plaintiff*

**The Law Office of Deborah M. Golden**

/s/ Deborah M. Golden_____

Deborah M. Golden

dgolden@debgoldenlaw.com

700 Pennsylvania Ave. SE, 2nd Floor

Washington, DC, 20003

*Co-Counsel for the Plaintiff*

*\*Pro hac vice motion forthcoming.*