**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Muna Jama,

      Plaintiff,

v.

William K. Marshall III, Director of the Federal
Bureau of Prisons; Andre Matevousian, Regional
Director of North Central Region, Federal Bureau
of Prisons; Warden Lance Molis of FCI Waseca; in
their official capacities only,

      Defendants.

Case No. 23-CV-3075 (JMB/SGE)

**ORDER**

---

Alec Shaw, CAIR Minnesota, St. Paul, MN; Aya Beydoun, *pro hac vice*, CAIR, Dearborn, MI; Deborah Golden, *pro hac vice*, the Law Office of Deborah M. Golden, Washington, DC; Lena Fatina Masri, *pro hac vice*, Zanah Ghalawanji, *pro hac vice*, and Gadeir Ibrahim Abbas, *pro hac vice*, CAIR National Legal Defense Fund, Washington, DC; for Plaintiff Muna Jama.

Marianne F. Kies, *pro hac vice*, and Andrew Warden, U.S. Department of Justice, Civil Division, Washington, DC, for Defendant William K. Marshall III.

Brian J. Boyd, *pro hac vice*, Marianne F. Kies, *pro hac vice*, and Andrew Warden, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants Andre Matevousian and Warden Michael Segal.

---

This matter is before the Court on Defendants William K. Marshall III's, Andre Matevousian's, and Michael Segal's (together, Defendants) Motion for Summary Judgment (Doc. No. 103) and Plaintiff Muna Jama's Motion for Summary Judgment (Doc. No. 110). For the following reasons, the Court denies Defendants' Motion and grants Plaintiff's Motion.

1

## BACKGROUND

### A.    Jama's Incarceration

Plaintiff Muna Jama is a Muslim woman who wears a hijab, a headscarf that covers the hair, ears, and neck, as part of her religious practice.  (Doc. No. 105-12 at 21:3–12, 79:1–10; Compl. ¶¶ 22, 23, 25, 26.)  Jama's faith requires her always to wear a hijab when she is in mixed-gender spaces outside of her immediate family.  (Doc. No. 105-1 at 2; Compl. ¶ 26.)  She has worn a hijab since she was a child, and she has never willingly been seen in public without it. (Doc. No. 105-12 at 81:18–21; Compl. ¶ 23.) Appearing in public without a hijab or being photograph without wearing a hijab and having the photo accessible to strangers is "a serious breach" of her faith and "a deeply humiliating and defiling experience" in conflict with her sincerely held religious beliefs.  (Compl. ¶ 27; *see also* Doc. No. 105-12 at 92:19–25, 93:1–15.)

Jama is currently incarcerated at FCI Waseca.  (Doc. No. 105-12 at 6:2–4; Compl. ¶ 22.)  When she arrived at the prison in 2019, officers did not permit her to wear her hijab for her identification photo.  (Doc. No. 105-12 at 142:9–19; Compl. ¶ 36.)   Officers photographed Jama without her hijab, and used this uncovered photo for Jama's ID card, the "Bed Book" (a physical book used to identify inmates), and the front of Jama's locker. (Doc. No. 105-12 at 105:25, 106:1–3; Compl. ¶¶ 37, 38, 40.)  Each time Jama swiped her ID card at the commissary, the uncovered photo would appear on a screen visible to other persons nearby.  (Doc. No. 105-12 at 106:3–6; Compl. ¶ 39.)

In July 2022, Jama filed a complaint with the BOP alleging violation of her religious rights resulting from the taking of the uncovered photo, the photo's existence in the

facility's database, and the required use of the ID card throughout the facility.  (Doc. No. 105-12 at 135:11–17; Compl. ¶ 41.)  Jama was then brought in for a new ID photo with her hijab on; however, officers also required Jama to take a second, uncovered photo.  (Doc. No. 105-12 at 139:7–14; Compl. ¶ 44.)  Jama later discovered that her uncovered photo continued to be used for her ID card, when she swiped her ID at the commissary, in the Bed Book, and on her locker, just as before. (Doc. No. 105-12 at 141:10–25; Compl. ¶¶ 47, 48, 49, 50.)

### B.    This Action

Jama filed suit in October 2023.  (Compl.)  Her Complaint includes one count: violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb.  (*Id.* at ¶¶ 61–72.)  The Complaint seeks to have her "illegally captured photographs and security footage destroyed," to "have official capacity FCI Waseca Defendants provide [her] with a new ID with a covered photograph," to "require official capacity Defendants to adopt RFRA compliant policies of jail identification and photos," and to "have individual capacity defendants provide monetary damages for violations of RFRA."  (*Id.* ¶ 60.)

In January 2024, Jama filed an Emergency Motion for Preliminary Injunction.  (*See* Doc. No. 21.)  This motion asked the Court to order FCI Waseca to replace the uncovered photo with a covered photo, to order FCI Waseca to stop using the uncovered photo in every way it impacts Jama's daily activities, and to replace her ID card with a covered photo.  (Doc. No. 22 at 15.)  After meeting and conferring, the parties addressed the issues raised by the preliminary injunction, and the prison adopted a dual photograph waiver. (Doc. No. 61 ¶ 13.)  Under the dual photograph waiver, the prison would keep an uncovered

3

photograph of Jama sealed in an envelope or in a restricted digital format, to be accessed only if Jama escapes.  (*Id.* ¶ 14.)  The prison would then use a covered photo of Jama for use throughout the facility.  (*Id.*)  In exchange for the adoption of this waiver, Jama withdrew her motion for preliminary injunction. (Doc. No. 34 ¶ 7.)

Defendants filed a Motion to Dismiss Jama's claim for injunctive relief (*see* Doc. No. 53) and a Motion to Dismiss Jama's claims against them in their individual capacities (*see* Doc. No. 58).  The Court denied the Motion to Dismiss Jama's claim for injunctive relief, but granted the Individual-Capacity Defendants' Motion to Dismiss.  (Doc. No. 75.) The Court concluded that the dual photograph waiver could not prevent recurrence of the challenged conduct and failed to remedy the BOP's continued retention of Jama's uncovered photograph, which was a separate harm alleged in the Complaint.  (*Id.* at 8.)

## DISCUSSION

Both parties now move for summary judgment.  (Doc. No. 103, 110.)  Defendants move for summary judgment under Federal Rule of Civil Procedure 56, arguing that as a matter of law, Jama's Complaint is moot because the BOP has restricted the use of her uncovered photograph, and because she is no longer subject to the BOP policy requiring an uncovered photograph during the intake process, which was the policy her Complaint challenged.[1]  (Doc. No. 104 at 9–10.)  Jama argues that she is entitled to summary judgment on the merits of her RFRA claim because the taking and retention of the uncovered photos

---

[1] Defendants also argue that Jama is not entitled to a nationwide injunction, nor is she entitled to a jury trial. (Doc. No. 104 at 37–41.)  Jama is no longer pursuing a nationwide injunction, and she concedes that she is not entitled to a jury trial for her RFRA claims, and so the Court need not address these arguments.  (*See* Doc. No. 111 at 6 n.1.)

constitute a substantial burden on Jama's religious exercise that is not the least restrictive means of protecting the government's interest in identifying inmates. (Doc. No. 111 at 5, 35.) She further argues that the dual photograph waiver is an additional burden that is also not the least restrictive means of protecting the government's interests. (*Id.* at 35.)

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law determines which facts are "material" and which are irrelevant: material facts are those whose resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive the motion, a non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). As is normally the case in a summary judgment motion, all justifiable inferences are to be drawn in the non-moving party's favor, *Anderson*, 477 U.S. at 255, meaning that the Court views the record in the light most favorable to Defendants when considering Plaintiff's motion, and in the light most favorable to Plaintiffs when considering Defendants' motion. *See, e.g.*, *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012).

## I.    JURISDICTION

Defendants argue that this case is moot and that Jama lacks standing. Because it remains possible for the Court to grant some effectual relief for the claimed harms, and

because the challenged conduct does not relate to only the intake policy, the Court concludes that a controversy remains and that Jama has standing.

### A.    Mootness

The Constitution limits federal courts' jurisdiction to actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018) (quotation omitted); *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (reversing court of appeals determination of mootness and describing mootness as occurring when it is "impossible for [the Court] to grant any effectual relief whatever" (quotation omitted)).

This can occur, for example, when "a complaining party manages to secure outside of litigation all the relief he might have won in it. . . ., a federal court must dismiss the case as moot." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024). When, in such a case, a defendant chooses to change its practices such that a plaintiff obtains the requested relief, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotation omitted). To be clear, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *Fikre*, 601 U.S. at 241 (quotations omitted); *see also Friends of the Earth*, 528 U.S. at 189 (noting that voluntary cessation does not moot a case when the

6

defendant is "free to return to his old ways" (citation omitted)).

Although plaintiffs typically bear the burden of establishing subject matter jurisdiction, *e.g.*, *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019), defendants bear a "heavy" burden when arguing that a case or controversy has become moot because of voluntary cessation of complained-of activity. *W. Va. v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). The Court also observes that when resolving a factual attack to subject-matter jurisdiction under Rule 12(b)(1), as here, courts may consider matters outside of the pleadings, such as uncontested factual allegations in sworn declarations. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016); *see also Fikre*, 601 U.S. at 242 (accepting "as true the supplemental evidence the government offered," which included declarations from government officials).

In this case, the Court concludes that this case is not moot, for two primary reasons. First, contrary to Defendants' argument, the challenged conduct has not been remedied, and Jama continues to have a legally cognizable interest in the outcome of this case. Jama's Complaint alleges harm resulting from the taking and retention of the uncovered photo. (*See* Compl. ¶¶ 27, 30, 35, 41, 53, 60; *see also id.* at 16–17.) Jama also sought an "injunction ordering official capacity Defendants to destroy Plaintiff's ID photographs taken without her hijab and any security footage showing Plaintiff without her hijab." (Compl. at 17; *see also id.* ¶ 60 ("This action aims to have Mrs. Jama's illegally captured photographs and security footage destroyed . . . .").) Jama continues to assert this harm. (Doc. No. 105-12 at 149:11–25, 150:1–10; Doc. No. 111 at 25–26.) Based on these allegations and record evidence, Jama's legally cognizable interest remains until

Defendants have destroyed all photographs showing Jama without her hijab. At this time, however, Defendants have not destroyed the physical and digital copies of the uncovered photo and have not committed to doing so even after Jama's release. (*See* Doc. No. 61 ¶¶ 14, 19, 20.) Therefore, it is not "impossible for [the Court] to grant any effectual relief whatever" to Jama, *Chafin*, 568 U.S. at 172, and Jama's claim is not moot.

Second, Defendants have not guaranteed that the current dual photograph waiver will not be rescinded before Jama's release. Nothing prevents Defendants from rescinding the dual photograph waiver; in fact, the waiver is subject to an annual review. (*See* Doc. No. 105-9 at 112:21–25, 113:1–2 ("Once [a policy waiver is] granted, they are granted and reviewed every year to ensure they are still needed.").)[2] Furthermore, it is important to acknowledge that Defendants have already failed to secure Jama's uncovered photo at least once: in May 2023, Jama was told that her uncovered photo was for only confidential Bureau records, but she later discovered that her uncovered photo continued to be used for her ID card, when she swiped her ID at the commissary, in the Bed Book, and on her locker. (Compl. ¶¶ 47, 48, 49, 50; *see also* Doc. No. 105-12 at 141:10–25.) The uncovered photo was kept on file, available for staff to view, and displayed for day-to-day purposes. (Compl. ¶¶ 51, 53.) The option of rescission, when taken together with the previous use of the uncovered photo, compels the Court to conclude that Defendants have not met their "formidable burden" to establish that there is no reasonable expectation of a return to

---

[2] On January 10, 2026, Defendants filed a letter (Doc. No. 137) saying the dual photograph waiver has been extended to January 2027. This fact, however, does not change the Court's analysis because the waiver could still be rescinded—or, if not rescinded, still subject to annual review.

challenged conduct.  *See Fikre*, 601 U.S. at 241 (quotation omitted).

For these reasons, the Court concludes that the identified harm to Jama has not been remedied, and the case is not moot.

### B.     Standing

Defendants also argue that Jama lacks standing to challenge both the intake photograph policy and the dual photograph waiver.   Standing is a jurisdictional prerequisite. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007); *see also* Fed. R. Civ. P. 12(h)(3) (providing that courts must dismiss any part of lawsuit over which it lacks subject matter jurisdiction).  The plaintiff must establish each of the following three factors: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Defendants claim that Jama is no longer subject to the intake photograph policy because she was granted the dual photograph waiver.  Defendants further argue that the dual photograph waiver remedied the routine uses of Jama's uncovered photograph.  These arguments, however, mischaracterize the Complaint, which does not assert a challenge to only the intake policy.  As discussed above, Jama's Complaint also raises a challenge to the taking and retention of the uncovered photo.  (*See* Compl. ¶¶ 27, 30, 35, 41, 53, 60; *see also id.* at 16–17.)  Jama continues to assert this challenge and claim an injury as a result. (Doc. No. 105-12 at 149:11–25, 150–1–10; Doc. No. 111 at 25–26.)  Jama need not refer explicitly to the name of the policy that led to the taking and retention of the uncovered photo; for the reasons discussed above, she has established that she has standing.

## II.    MERITS

Defendants also argue that they are entitled to summary judgment on the merits of Jama's RFRA claim because the dual photograph waiver does not substantially burden Jama's religion, and because the retained uncovered photo serves a compelling government interest and is the least restrictive means of furthering those interests.  For her part, Jama argues that she is entitled to summary judgment because the taking and retention of her uncovered photo was a substantial burden on her religious exercise that is not the least restrictive means of protecting Defendants' interest.  The Court concludes that there is no genuine dispute that Defendants' taking and retention of Jama's uncovered photo is not the least restrictive means of furthering their compelling interest in safety and security.  The Court therefore denies Defendants' Motion for Summary Judgment and grants Jama's Motion for Summary Judgment.

RFRA prohibits the Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means.  42 U.S.C. § 2000bb-1; *Tanzin v. Tanvir*, 592 U.S. 43, 45 (2020).  A substantial burden exists when the Government forces a person to act in violation of her religious beliefs, by threatening sanctions, punishment, or denial of an important benefit as a consequence for noncompliance.  *New Doe Child #1 v. United States*, 901 F.3d 1015, 1026 (8th Cir. 2018).  The plaintiff bears the initial burden of proving that the challenged action substantially burdened her exercise of religion.  *Holt v. Hobbs*, 574 U.S. 352, 361 (2015).  If the plaintiff satisfies this initial burden, the burden then shifts to the defendants to show that the challenged action was in furtherance of a compelling governmental interest and was the

least restrictive means of furthering that compelling governmental interest. *Id.* at 363. RFRA contemplates a "focused" inquiry and requires the defendant to demonstrate that the compelling interest test is satisfied through application of the challenged policy "to the person"—the particular claimant whose sincere exercise of religion is being substantially burdened. *Id.* (quotation omitted).

Here, Jama satisfies this initial burden. Defendants—more than once—threatened Jama with solitary confinement if she did not remove her hijab to be photographed, and removal of Jama's hijab was conduct that violated her religious beliefs. (Doc. No. 105-12 at 21:3–12; Compl. ¶¶ 30, 36, 44.) Because any policy that requires Jama to remove her hijab and be photographed requires her to choose between disciplinary action and the violation of her religious beliefs, there is no genuine dispute that Defendants have substantially burdened Jama's religious exercise. The retention of Jama's uncovered photo further substantially burdens Jama's religious exercise because the photo's mere existence means a non-familial male could potentially view the photo, thereby violating Jama's religious beliefs.

Because the Court concludes that Defendants have imposed a substantial burden on Jama's religious exercise, the Court must consider whether Defendants have a compelling interest pursued through the least restrictive means. The parties do not dispute that Defendants have a compelling interest in prison safety and security, including the ability to identify inmates.[3] However, the parties dispute whether taking and retaining Jama's

---

[3] Although the parties do not dispute that Defendants have a compelling interest generally in prison safety and security, *see Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008)

uncovered photograph for use in the event of her escape is the least restrictive means of pursuing this interest.  The Court concludes that Defendants have failed to show that taking and retaining Jama's uncovered photograph is the least restrictive means of furthering their compelling governmental interest in safety and security.

Defendants argue that the dual photograph waiver would allow law enforcement to quickly and reliably identify Jama if she escapes.  (Doc. No. 104 at 36.)  Defendants note that "an escapee who wears a head covering in prison may remove it" and that, "[t]o evade capture, there is a very real likelihood that escapees will attempt to alter the appearance by which they were known during their incarceration." (*Id.* at 35 (quotation omitted).)  Having only a covered photograph of Jama, however, better meets the goal of having an accurate representation of Jama's appearance.  As Jama notes in her Complaint, she wears a hijab every day; a covered photo therefore "better matches Ms. Jama's everyday appearance" and "actually serves Defendants['] purposes better than the uncovered photos . . . ." (Compl. ¶ 5.)  In fact, Jama "often found that officers in the facility would actually have a hard time identifying her by her [uncovered photo] ID card because she was always in her hijab." (*Id.* ¶ 34.)

Defendants' expert Eichenlaub asserted that an uncovered photo is necessary for law enforcement if an inmate escapes, saying a "clear, complete, and accurate photograph"

---

("A prison's interest in order and security is always compelling."), there is nothing in the record to suggest that Defendants themselves (as opposed to the law enforcement agencies responsible for investigating and rearresting an escaped inmate) have a compelling interest in the taking and retention of an uncovered photo.  However, because the arguments presented concern only the second prong, the Court assumes without deciding that Defendants have a compelling interest.

is the primary means of identifying escapees. (Doc. No. 105-5 at 21.) Although Eichenlaub claims that an image of an escapee wearing a hijab "is neither complete nor clear, as the hijab covers the wearer's hair and ears and neck," he does not assert that the law enforcement authorities responsible for finding escapees have specifically requested uncovered photographs of Muslim inmates—nor does he assert that the lack of an uncovered photograph has impeded the search for an escapee. (*See id.* at 21–24.) The Court cannot "defer[] to . . . prison officials' mere say-so that they could not accommodate petitioner's request." *Holt*, 574 U.S. at 369 ("Courts must hold prisons to their statutory burden, and they must not assume a plausible, less restrictive alternative would be ineffective." (quotation omitted)).

Furthermore, Defendants do not apply a dual photograph policy to other inmates, even though other inmates could easily alter their appearance if they were to escape from prison. For instance, a non-Muslim inmate who never wore a headscarf in prison could begin wearing a headscarf upon escaping—but Defendants do not require non-Muslim inmates to be photographed both with and without a headscarf. Any escapee could begin wearing a headscarf as a disguise, but Defendants apparently "do[] not think that this possibility raises a serious security concern." *Id.* at 367. Additionally, it is highly speculative that Jama, who wears a hijab as part of her deeply held religious views, would cease to do so in an attempt to disguise herself if she were to escape from prison. *See id.* at 371 (Sotomayor, J., concurring) ("[P]rison policies grounded on mere speculation are exactly the ones that motivated Congress to enact RLUIPA." (quotation omitted)).

Finally, Defendants have failed to show, in the face of Plaintiff's evidence, that its

13

prison system is so different from the many other institutions that do not require hijab-less photos for identification purposes. *See, e.g.*, *CAIR Announces Settlement with Kentucky Jail over Removal of Muslim Woman's Hijab for Booking Photo*, CAIR (Apr. 17, 2024), https://www.cair.com/press_releases/cair-announces-settlement-with-kentucky-jail-over-removal-of-muslim-womans-hijab-for-booking-photo/; *Passport Photos*, Travel.State.Gov, U.S. Dep't of State, https://travel.state.gov/content/travel/en/passports/how-apply/photos.html (permitting head coverings worn for religious purposes in passport photos so long as the full face is visible and no shadows or clothing block the face). Defendants have therefore failed to establish why the risk that Jama could remove her hijab to disguise herself is so great that Defendants could not destroy all uncovered photographs of her.[4] There is therefore no genuine dispute that Defendants' taking and retention of Jama's uncovered photo is not the least restrictive means of furthering their compelling interest in safety and security. The Court denies Defendants' Motion for Summary Judgment and grants Jama's Motion for Summary Judgment. Consequently, the Court orders that all uncovered photographs of Jama be destroyed.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Official-Capacity Defendants' Motion for Summary Judgment (Doc. No.

---

[4] To the extent that the parties raise a factual dispute about whether there is a safety and security benefit to retaining Jama's uncovered photograph, the Court concludes that no reasonable juror could find such a benefit.

15

103) is DENIED.

2.      Plaintiff's Motion for Summary Judgment (Doc. No. 110) is GRANTED.


Dated:  March 25, 2026                                    /s/ *Jeffrey M. Bryan*
                                                          Judge Jeffrey M. Bryan
                                                          United States District Court

15